# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

K.O.D.,

    Plaintiff,

v.                                                                                              No. 1:25-cv-00391

KRISTI NOEM, Secretary of the Department
of Homeland Security; and

TODD LYONS, Acting Director of the
Immigration and Customs Enforcement,

    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

### INTRODUCTION

    Pursuant to Counts 1 and 2 of Plaintiff's Complaint for Declaratory and Injunctive Relief, Plaintiff K.O.D. requests a Temporary Restraining Order (TRO) to (i) enjoin Defendants from terminating his F-1 student status under the SEVIS [Student and Exchange Visitor] system, and (ii) require Defendants to set aside their termination determination.

    Since July 2023, Plaintiff has been studying petroleum engineering as a doctoral student at the New Mexico Institute of Mining and Technology ("New Mexico Tech") in Socorro, New Mexico. Plaintiff is a citizen and national of the Republic of Ghana ("Ghana"). He has not committed any crime or even a traffic violation. Nor has he shown any violence (or even participated in any protest) in the United States or elsewhere. He moved to the United States in July 2023 after completing his undergraduate studies in Ghana and his master's degree in Italy. As

1

a doctoral student, Plaintiff is a research assistant at New Mexico Tech, is a member of professional academic organizations, presents at professional and academic conferences, and has authored and published academic research papers.

However, his dream of finishing his doctoral program and obtaining a Ph.D. is now in severe jeopardy because the Department of Homeland Security ("DHS") terminated his F-1 student status in the SEVIS system[1] without notifying him or even his school on or about April 9, 2025. Plaintiff is not alone with respect to this abrupt termination of student status. Numerous foreign students in the United States were recently notified by their schools that their F-1 student status was terminated for unspecified reasons.[2]

Because of this termination, Plaintiff faces imminent and irreparable harm. Plaintiff faces potential immigration detention and deportation. He has effectively been disenrolled from his Ph.D. program and he can no longer work as a research assistant. This puts him in financial jeopardy because his financial aid, which is contingent on participation in the Ph.D. program, has been suspended. Moreover, the abrupt termination of his F-1 student status in the SEVIS system will prevent him from making meaningful progress in his doctoral program and obtaining his Ph.D. Plaintiff likely accrues unlawful presence daily as he is likely out of immigration status, which significantly affects his chance of reinstating his F-1 student status in the future. *See Jie Fang v. Director United States Immigration & Customs Enforcement*, 935 F.3d 172, 176 (3d Cir. 2019)

---

[1] SEVIS is "the web-based system that [DHS] uses to maintain information regarding:" F-1 "students studying in the United States[.]" https://studyinthestates.dhs.gov/site/about-sevis.
[2] Brandon Drenon & Robin Levinson-King, *Anxiety at US Colleges as Foreign Students Are Detained and Visas Revoked*, BBC News (Apr. 18, 2025), https://www.bbc.com/news/articles/c20xq5nd8jeo.

(noting that a student should not have been out of a valid F-1 student status for more than 5 months for a reinstatement application).

To be clear, Plaintiff does *not* challenge the revocation of his F-1 *visa* in this case. Instead, Plaintiff brings this lawsuit to challenge DHS's unlawful termination of his F-1 student *status* in the SEVIS system.[3] At the most elemental level, the United States Constitution requires notice and a meaningful opportunity to be heard. *See Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009); see also *Matthews v. Eldridge*, 424 U.S. 319, 322 (1976). "An essential principle of due process is that a deprivation of life, liberty or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Riggins*, 572 F.3d at 1108 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)). No such process was provided here with respect to the termination of student status, warranting relief under Count 1 of Plaintiff's Complaint.

Further, as to Count 2 of Plaintiff's Complaint, the revocation of an F-1 visa does not constitute a failure to maintain F-1 student status under the SEVIS system and, therefore, cannot serve as a basis for termination of F-1 student status in the SEVIS system. For the agency-initiated termination of F-1 student status in the SEVIS system, DHS's ability to terminate F-1 student status "is limited by [8 C.F.R.] § 214.1(d)." *See Jie Fang*, 935 F.3d at 185 n.100. Under this 8 C.F.R. § 214.1(d), DHS can terminate F-1 student status under the SEVIS system only when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for

---

[3] There is a difference between a F-1 student visa and F-1 student status. The F-1 student visa refers only to the document noncitizen students receive to enter the United States, whereas F-1 student status refers to students' formal immigration classification in the United States once they enter the country.

termination. In other words, under this regulation, the revocation of an F-1 visa does not provide a basis to terminate F-1 student status under the SEVIS system.

DHS's own policy guidance confirms that "[v]isa revocation is *not*, in itself, a cause for termination of the student's SEVIS record." ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010) (emphasis added).[4] Rather, if the visa is revoked, <u>the student is permitted to pursue his course of study in school</u>, but upon departure, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States. *See* Guidance Directive 2016- 03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016).[5] If DHS wishes to terminate F-1 student status under the SEVIS system after (or independent of) revocation of an F-1 visa, DHS must comply with 8 C.F.R. § 214.1(d). *See Jia Fang*, 935 F.3d at 185 n.100. DHS has not done so here.

Because of these imminent and real harms, Plaintiff requests that the Court grant a temporary restraining order to (i) enjoin Defendants from terminating his F-1 student status under the SEVIS [Student and Exchange Visitor] system, and (ii) require Defendants to set aside their termination determination.

## FACTUAL BACKGROUND

Plaintiff is a citizen and national of the Republic of Ghana. Declaration of K.O.D., ¶ 2, Attached as Ex. A. He received his bachelor's degree and master's degree in petroleum engineering in Ghana and Italy, respectively. *Id.* ¶ 4. In 2023, Plaintiff was accepted into New Mexico Tech's

---

[4] https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.
[5] https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

4

Ph.D. program for petroleum engineering. *Id.* ¶ 3. He applied for and was successfully granted an F-1 student visa to enter the United States. *Id.* ¶¶ 6-7.

Plaintiff moved to Socorro, New Mexico in August 2023 and began his doctoral studies at New Mexico Tech. *Id.* ¶ 3. As part of his offer, Plaintiff received financial aid that covered his tuition and basic living expenses, such as housing and food. *Id.* ¶ 14. As part of his participation in the Ph.D. program, Plaintiff also served as a research assistant at New Mexico Tech. *Id.* ¶ 8.

On April 9, 2025, Valerie Maez, New Mexico Tech's International Programs Coordinator, contacted Plaintiff and requested that he meet with her at her office. *Id.* ¶ 10. Ms. Maez informed Plaintiff that school officials had discovered, via the Student & Exchange Visitor Information System (SEVIS) database, that his student status had been terminated, and provided him with a copy of that record. *Id.* ¶¶ 10-11. The termination reason merely stated:

> TERMINATION REASON: **OTHER** - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated.

Plaintiff has no criminal history in the United States (or elsewhere). *Id.* ¶ 12. He has maintained a clean record without even minor infractions such as a traffic or parking violation. *Id.* And he has not engaged in any protest activities, either online or in person. *Id.* ¶ 13. In 2016, Plaintiff lawfully obtained a B-1/B-2 visitor visa to attend a professional conference in the United States. *Id.* ¶ 5. Upon arrival, customs officials denied Plaintiff entry into the United States, ostensibly not being satisfied with the reason for Plaintiff's travels to the United States. *Id.* Plaintiff was prohibited from entering the United States for five years. *Id.* Just as the 2016 denial did not

prevent Plaintiff from lawfully obtaining an F-1 visa in 2023, it cannot now serve as a legitimate basis for terminating his current student status.

The consequences of this termination have been severe. As a result of DHS's termination of Plaintiff's F-1 student visa status, he has been effectively disenrolled from his Ph.D. program and has lost the financial aid he has relied on for living costs. *Id.* ¶ 14. On April 21, 2025, New Mexico Tech provided Plaintiff with a notice of "Graduate Contract Change or Cancellation" which stated his graduate contract with the university was being terminated due to "[i]mmigration status currently revoked by USCIS." *Id.* ¶ 15; *see also* Notice of "Graduate Contract Change or Cancellation" attached hereto as Exhibit B.

## STANDARD OF REVIEW

The purpose of a TRO is to "preserve the relative positions of the parties until a trial on the merits can be held." *Legacy Church, Inc. v. Kunkel*, 455 F. Supp. 3d 1100, 1132 (D.N.M. 2020) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Pan Am. World Airways, Inc. v. Flight Engineers' Int'l Ass'n, PAA Chapter, AFL-CIO*, 306 F.2d 840, 842 (2d Cir. 1962) ("The purpose of a temporary restraining order is to preserve an existing situation in *statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction."). "The requirements for a TRO issuance are essentially the same as those for a preliminary junction order." *Legacy Church, Inc.*, 455 F. Supp. 3d at 1131-1132. To establish a right to a TRO, "[a] party must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 1132. These factors are satisfied here.

## ARGUMENT

**1. THE TERMINATION OF PLAINTIFF'S F-1 STUDENT STATUS WAS UNLAWFUL.**

Defendants' termination of Plaintiff's F-1 student status under the SEVIS system was unlawful for two independent reasons: First, it violates the Due Process Clause of the Fifth Amendment under the Constitution (Count 1); and second, it violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, including the regulatory regime at 8 C.F.R. § 214.1(d).

**a. The Termination Violates the Fifth Amendment's Due Process Clause (Count 1)**

Defendants' termination of Plaintiff's F-1 student status straightforwardly violates the Fifth Amendment's Due Process Clause. As an admitted noncitizen student in the United States, Plaintiff has due process rights. *See de la Llana-Castellon v. I.N.S.*, 16 F.3d 1093, 1096 (10th Cir. 1994) ("[N]oncitizens, even those charged with entering the country illegally, are entitled to due process when threatened with deportation."); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce an alien enters the country … the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.") The basic principle of a noncitizen's due process rights is "the opportunity to be heard at 'a meaningful time and in a meaningful manner.'" *de la Llana-Castellon*, 16 F.3d at 1096 (quoting *Mathews*, 424 U.S. at 333).

However, in this case, Defendants broke the promises guaranteed by the United States Constitution. Defendants did not provide any notice to Plaintiff or his school about their decision to terminate Plaintiff's F-1 student status. Without knowing when Plaintiff's F-1 student status was

terminated, Plaintiff learned about this termination only because his school discovered it during the school's inspection of SEVIS on April 9, 2025.

Nor did Defendants comply with the requirements of providing adequate explanation and a meaningful opportunity to respond. Defendants provided a vague and ambiguous explanation that Plaintiff's F-1 student status in the SEVIS system was terminated on the grounds of "OTHER– Individual identified in criminal record check and/or had had their VISA revoked. SEVIS record has been terminated." Ex. C. However, this explanation is inadequate to be consistent with the requirements under the Due Process Clause. Plaintiff has not committed any crime (or even a traffic violation). He has maintained his student status. Thus, the criminal record check or failure to maintain student status could not serve as the basis for terminating his F-1 student status.

Accordingly, Defendants' failure to provide notice, adequate explanations, and meaningful opportunity to terminate Plaintiff's F-1 student status is in violation of the Due Process Clause.

**b.      The Termination Violates the Administrative Procedure Act (Count 2)**

Defendants' termination of Plaintiff's F-1 student status under the SEVIS system also violates the Administrative Procedure Act (APA). As a preliminary matter, Defendants' termination of Plaintiff's F-1 student status is a final agency action for which this Court has jurisdiction to review. *See Jie Fang*, 935 F.3d at 182 ("[t]he order terminating these students' F-1 visas marked the consummation of the agency's decision making process, and is therefore a final order"). On the substantive issue, Defendants had no statutory or regulatory authority to terminate Plaintiff's F-1 student status based simply on revocation of a visa.

Critically, DHS's ability "to terminate an F-1 [student status] is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang*, 935 F.3d at 185 n.100. Under this regulation, DHS can terminate student

8

status only when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. Accordingly, the revocation of a visa does not constitute a failure to maintain status and cannot, therefore, serve as a basis for termination of F-1 student status. If a visa is revoked before the student's arrival in the United States, the student may not enter, and his SEVIS record of F-1 student status is terminated. However, the SEVIS record of F-1 student status may not be terminated as a result of visa revocation after a student has been admitted into the United States because the student is permitted to continue the authorized course of study. *See* ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010) (attached as Ex. D). DHS's own policy guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." *Id.* Rather, if the visa is revoked, the student is permitted to pursue his course of study in school, but upon departure, the SEVIS record of F-1 student status is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States. *See* Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016). (attached as Ex. E).

      Moreover, Plaintiff has maintained his F-1 student status. Under the regulation, students fail to maintain their status when they do not comply with the regulatory requirement, such as failing to maintain a full course of study, engaging in unauthorized employment, or other violations of their requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. § 214.1(e)-(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime

9

of violence with a potential sentence of more than a year, "constitute a failure to maintain status." However, none of these violations occurred in Plaintiff's case. Plaintiff has not committed any crime. He has not engaged in unauthorized employment. Nor has he provided any false information to DHS.

Because Defendants unlawfully terminated Plaintiff's F-1 student status without any statutory or regulatory authority, Defendants' termination should be set aside pursuant to 5 U.S.C. § 706(2)(A) as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, including 8 C.F.R. § 214.1(d).

In sum, Defendants' termination of Plaintiff's F-1 student status violates the Constitution and the APA. Defendants provided no notice, adequate explanation, or meaningful opportunity for Plaintiff to respond. Nor do Defendants have statutory or regulatory authority to terminate Plaintiff's F-1 student status, including under 8 C.F.R. § 214.1(d). The termination must be set aside and enjoined.

2. **THE EQUITIES STRONGLY FAVOR AN INJUNCTION**

Plaintiff will suffer irreparable injury if Defendants' termination determination is not set aside and enjoined. First, Plaintiff faces possible detention and deportation because of the unlawful presence stemming from this termination. "[D]eportation is a drastic measure and at times the equivalent of banishment or exile." *Costello v. I.N.S.*, 376 U.S. 120, 128 (1964). *See* Ex. A, ¶ 16 ("I fear being forced to leave the country before I can complete my Ph.D. program."). This Court's order of setting aside Defendants' termination of Plaintiff's F-1 student status can provide a critical form of relief and defense in removal proceedings.

Second, this termination will result "in the loss 'of all that makes life worth living'" for Plaintiff's academic studies and career trajectory. *Bridges v. Wixon*, 326 U.S. 135, 147 (1945). *See* Ex. A, 16 ("Losing my F-1 status puts my education, research, and career trajectory at risk, and I fear being forced to leave the country before I can complete my Ph.D. program.").

Third, this termination will result in extreme financial and academic hardship to Plaintiff. *See* Ex. A ¶ 16 (stating that Plaintiff's financial aid assistance has been suspended and Plaintiff has graduate contract with New Mexico Tech has been terminated).

Fourth, this termination will likely result in the accrual of out of status daily, which is a critical factor for Plaintiff's future reinstatement of F-1 student status. *See Jie Fang*, 935 F.3d at 176 (noting that a student should not have been out of a valid F-1 student status for more than 5 months for a reinstatement application).

By contrast, Defendants have advanced no substantial interest in terminating Plaintiff's F-1 student status. Indeed, granting a temporary restraining order would merely maintain the status quo, permitting Plaintiff to continue his studies in the United States.

Defendants also have no legitimate interest in enforcing this unconstitutional and unlawful termination, particularly where Plaintiff has no prior arrests, convictions, or protest activity in the United Staes. Nor do Defendants have a legitimate interest to exceed their statutory and regulatory authority by terminating Plaintiff's F-1 student status in a manner that is contrary to federal law. Enforcement of an unconstitutional law harms the public interest. *See Hobby Lobby Stores, Inc. v. Sebelius,* 723 F.3d 1114, 1145 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights."); *see also Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("[E]nforcement of an unconstitutional law is always contrary to the public interest.").

Thus, the balance of equities and the public interest both strongly favor a temporary restraining order.

## CONCLUSION

The Court should issue a temporary restraining order (i) enjoining Defendants from terminating Plaintiff's F-1 student status under the SEVIS system, and (ii) requiring Defendants to set aside their termination determination.

Respectfully submitted,

**AMERICAN CIVIL LIBERTIES UNION OF NEW MEXICO**

 /s/ Rebecca Sheff
Rebecca Sheff
Max Isak Brooks
Leon Howard
P.O. Box 566
Albuquerque, NM 87103
Phone: (505) 266-5915
rsheff@aclu-nm.org
mbrooks@aclu-nm.org
lhoward@aclu-nm.org

-and-

**HUFFMAN WALLACE & MONAGLE LLC**

 /s/ Shayne C. Huffman
Shayne C. Huffman
Jason T. Wallace
Levi A. Monagle
122 Wellesley Drive SE
Albuquerque, NM 87106
Phone: (505) 255-6300
shayne@hwm.law
jason@hwm.law
levi@hwm.law

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2025, a true and exact copy of the foregoing was served via certified mail upon Defendants as follows:

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Secretary of Homeland Security
Department of Homeland Security
2707 Martin Luther King Jr. Ave SE
Washington, D.C. 20528-0525

The Office of the United States Attorney
for the District of New Mexico
Albuquerque Plaza
201 3rd Street Northwest, Suite 900
Albuquerque, NM 87102

                */s/ Shayne C. Huffman*
                Shayne C. Huffman